UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| ALEJANDRO RAMIREZ-SERNA, | Case No. 5:26-cv-02384-DTB |
| Petitioner, | **ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS** |
| v. | |
| MARKWAYNE MULLIN, Secretary, U.S. Department of Homeland Security, et al., | |
| Respondents. | |

**I.**

**PROCEDURAL HISTORY**

On May 5, 2026, petitioner Alejandro Ramirez-Serna ("Petitioner"), through counsel, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 ("Petition") (Docket No. 1), along with the supporting declaration of Petitioner ("Petitioner Decl.") (Docket No. 1-1 at 1-18), [1] with attached exhibits (Docket No. 1-1 at 19-149).

---

[1]     For the parties' pleadings and exhibits, the Court cites to the CM/ECF pagination at the top of each page.

1

The Petition alleges that Petitioner was arrested and detained on April 1, 2026, when he appeared for a pre-scheduled appointment at a United States Citizenship and Immigration Services ("USCIS") facility in the City of Industry. (Docket No. 1 at 2, 13). The Petition also alleges that on April 1, 2026, following his arrest and detention by Immigration and Customs Enforcement ("ICE"), he was served with a Bautista Class Notice in Spanish, notifying him that he was a member of the class certified in the case Maldonado Bautista v. Santa Cruz, Case No. 5:25-cv-01873-SSS-BFM (C.D. Cal) and thereby entitled to the specific procedural protections regarding U-visa eligibility. (Docket No. 1 at 15, Exhibit ["Exh."] B at 21). The Petition seeks Petitioner's immediate and unconditional release from custody or, in the alternative, a bond hearing. (Docket No. 1 at 44).

Also on May 5, 2026, Petitioner filed an Ex Parte Application for Temporary Restraining Order and Order to Show Cause why a Preliminary Injunction Should not Issue ("Application"). (Docket No. 3).

On May 7, 2026, the Court denied the Application but prohibited Petitioner's removal from the District during the pendency of this action. (Docket No. 8).

On May 13, 2026, in accordance with General Order 26-05's expedited briefing schedule (Docket No. 6), Respondents filed an Answer to the Petition ("Answer"). (Docket No. 10). In their Answer, which is brief, Respondents do not address the substantive issues or claims raised in the Petition, nor do they even mention that they have previously notified Petitioner that he is a member of the certified class in Bautista. Instead, Respondents state, *inter alia*, that "[P]etitioner was charged with driving under the influence in 2003. To the extent Petitioner would be entitled to any remedy, at most it would be ordering a bond hearing to be held before an Immigration Judge under Section 1226(a)." (Docket No. 10 at 2).

///

2

On May 15, 2026, Petitioner filed a Reply, asserting that he is seeking immediate release from custody, as a bond hearing would be futile. (Docket No. 11 at 9).

Thus, this matter is now ready for decision. For the reasons set forth below, the Court recommends that the Petition be granted.

## II.

## BACKGROUND

Petitioner is a 53-year-old citizen and national of Mexico. (Petitioner Decl. at ¶ 1). He first entered the United States without admission or parole in or about 1992, when he was nineteen years old. (Id. at ¶ 7). Petitioner currently resides in Bell Gardens and for more than three decades has been an active and productive member of society, supporting himself through honest labor, paying his taxes, participating as a member of his Catholic parish, and sending financial support to his elderly parents in Mexico. (Id. at ¶¶ 10-11).

However, beginning in or about 2005, an unknown person living in the Los Angeles area (and using the alias "Luis Armando Barrios-Perez," among others) misappropriated Petitioner's personal identifying information, including his name and date of birth, and obtained a California driver's license in Petitioner's name. (Docket No. 1-1 at 41-60).

On November 18, 2005, that other individual who was unlawfully using Petitioner's identity, while driving under the influence of alcohol, caused a fatal automobile collision on Central Avenue in the City of Los Angeles. The collision killed a 53-year-old man, Gregorio Coronado. The Traffic Collision Report attributed the conduct to "Alejandro Ramirez Serna" under DL A9746869. (Id. at 48). On June 4, 2006, the DMV issued an Order of Suspension/Revocation under

DL A9746869 pursuant to California Vehicle Code § 13953, revoking the license of the person responsible for the fatal collision. (Id. at 49).

Petitioner - who was uninvolved in any traffic accident - eventually learned of the stolen-identity revocation when he attempted to obtain his own driver's license. On October 21, 2015, Petitioner formally disputed the record by filing California DMV Form DL 208, Traffic Accident Record Correction Request, certifying under penalty of perjury that he was "not involved in a traffic accident that occurred in or near LOS ANGELES, CA on the date of 11-18-05." (Id. at 48).

On or about January 5, 2016, the California DMV adjudicated Petitioner's correction request and corrected the underlying record. (Id.).

Thus, Petitioner asserts, the State of California has therefore already determined—formally, in writing, and after individualized review—that the 2005 fatal DUI accident attributed to "Alejandro Ramirez Serna" under DL A9746869 was not committed by Petitioner. (Id.).

The individual who unlawfully used Petitioner's name in 2005 was thereafter prosecuted federally for vehicular manslaughter, charged as an aggravated felon, and removed to Mexico. (Docket No. 1 at 10). The Federal Bureau of Investigation ("FBI") maintains a separate criminal history record for that individual under FBI UCN 928175LB9 and Alien File Number A78105337 - numbers that do not belong to Petitioner. (Id.).

The third-party FBI rap sheet associated with FBI UCN 928175LB9 (which ICE attached to its I-213 in Petitioner's case, see Docket No. 1-1 at 27-33) shows: (i) A 1999 expedited removal under 8 U.S.C. § 1325 and 18 U.S.C. § 911 (false claim to U.S. citizenship); (ii) a 2003 charge in Tucson, Arizona; (iii) a 2009 charge of "8 USC 1231 REINSTATEMENTS, 16A AGG FELON 19A2 VEHICULAR MANSLAUGHTER WHILE INTOXICATED," with disposition "DEPORTED TO

4

MEXICO VIA CALEXICO, CA 1-21-09 AFOOT." That entire criminal history—including the prior removal and aggravated-felony deportation - pertains to a different person entirely, the individual who stole Petitioner's identity. (Id.).

Petitioner maintains that ICE's own Form I-213 narrative concedes the misidentification. After Petitioner's warrantless arrest at the USCIS Application Support Center on April 1, 2026, ICE Officer Avina conducted a more detailed interview at the Los Angeles Field Office. (Docket No. 1 at 10). The narrative states: "RAMIREZ stated that he has never been removed from the United States, that he has never applied for any immigration benefit before January 22, 2026, and that he [has] never been in state custody. RAMIREZ stated that he was arrested for a DUI but then cited out of the local jail but that he was never sentenced to state prison. Based on the new information gathered, I Officer Avina, determined that RAMIREZ was not the same subject as our target, and even though they shared the same name, date of birth and country of citizenship as RAMIREZ, RAMIREZ is amenable to removal pursuant to section 212(a)(6)(A)(i) and 212(a)(7)(A)(i)(I) of the INA." (Id. at 10-11; Docket No. 1-1 at 25).

Following this determination, ICE charged Petitioner under 8 U.S.C. § 1231(a)(5) to an inadmissibility theory under §§ 212(a)(6)(A)(i) and 212(a)(7)(A)(i)(I). Petitioner remains in custody and has not been provided an individualized custody determination as of the date the Petition was filed. (Docket No. 1 at 11).

Petitioner is also the principal beneficiary of a Form I-918 Petition for U Nonimmigrant Status filed with USCIS on November 17, 2025, based upon his status as a victim of qualifying criminal activity, specifically, a felonious assault under California Penal Code § 243(d), which occurred at the Pico Rivera Sports Arena on June 16, 2024. (Docket No. 1 at 11-12; Docket No. 1-1 at 69-97) (USCIS

Form I-918 Petition, Supplement B Certification by Los Angeles County Sheriff's Department, and Police Report).

The criminal incident giving rise to Petitioner's Form-I-918 Petition occurred on June 16, 2024, when Petitioner witnessed a man attacking a woman and intervened to help her. (Docket No. 1 at 12). The assailant struck Petitioner with such force that Petitioner lost consciousness. Petitioner sustained a brain hemorrhage; he was hospitalized for approximately nine (9) days and permanently lost his sense of smell. (Id.; Petitioner Decl. at ¶¶ 21-26; Docket No. 1-1 at 99-114 (Clinical Evaluation by Josue Diaz, LCSW)).

Petitioner cooperated fully with the Los Angeles County Sheriff's Department's investigation. The Sheriff's Department, through Acting Captain Jose L. Hernandez, signed and certified Form I-918 Supplement B (U Nonimmigrant Status Certification, Case No. 924-03243-1580-144) on Petitioner's behalf. (Docket No. 1-1 at 81-85).

Petitioner was diagnosed by a licensed clinical social worker (Josue Diaz, LCSW License #89766; clinical supervisor Amanda Banda, Ed.D., LCSW) with Major Depressive Disorder (PHQ-9 score: 22, "Severe"), Generalized Anxiety Disorder (GAD-7 score: 20 out of 21, "Severe"), and Post-Traumatic Stress Disorder (PCL-5 score: 61, well above the diagnostic threshold of 33). The clinician concluded that Petitioner's psychological functioning will worsen if he is detained or removed. (Docket No. 1-1 at 99-114).

On January 22, 2026, Petitioner filed a Form I-192 Application for Advance Permission to Enter as a Nonimmigrant in connection with the I-918, together with a Form I-765 Application for Employment Authorization. (Docket No. 1-1 at 69-97).

/ / /

6

Petitioner is also the beneficiary of a Form I-130 Petition for Alien Relative filed approximately two years ago by his United States citizen brother, which remains pending with USCIS. (Docket No. 1-1 at 175-76) (Declaration of Daniel Ramirez, Petitioner's Brother).

On or about March 25, 2026, USCIS issued Petitioner a notice scheduling him to appear in person on April 1, 2026, at the USCIS Application Support Center located at 17843 Colima Road, City of Industry, California 91748, to provide biometrics in connection with his pending U-visa petition. (Petitioner Decl. at ¶ 32).

On April 1, 2026, at approximately 11:00 a.m., Petitioner appeared at the City of Industry USCIS facility for his scheduled biometrics. (Docket No. 1 at 13). As he stood in line, a female staff member without a uniform approached him, took his biometrics appointment notice (claiming it was "too blurry" and that she would print a replacement), and walked him into a side room. (Id.). Inside the room were three ICE officers in plain clothes (no uniforms or visible insignia). Three unmarked black vehicles were parked outside. The officers identified themselves as some kind of "border patrol," told Petitioner he had a "deportation order," handcuffed him from behind (so tightly that they had to move the handcuffs to the front), and produced no warrant, no I-200 Warrant of Arrest, no I-205 Warrant of Removal, and no other documentation. They placed him into a vehicle within minutes. (Petitioner Decl. at ¶¶ 32-39; Docket No. 1-1 at 24-25).

The arrest occurred without any warrant, administrative or judicial. (Docket No. 1 at 14). ICE has never claimed that any warrant existed at the time of the arrest. (Id.). Nor was there any "likely to escape" circumstance: Petitioner had walked voluntarily into a federal building to provide biometrics for an immigration application he had himself filed. (Petitioner Decl. at ¶¶ 32, 39).

///

7

Petitioner was subsequently transported to ICE's Los Angeles Field Office, where he remained in custody for approximately eight hours. (Docket No. 1 at 14). ICE officers fingerprinted him and questioned him about a deportation order they claimed he had. Petitioner repeatedly told them: "You guys are mistaken. I have never been in jail. The person who had the accident/DUI, he was deported already. That's not me. That's not me." (Id. at 14-15). After ICE Officer Avina conducted a "more detailed interview" and reviewed the records, ICE concluded - as recorded in the I-213 - that Petitioner was "not the same subject as our target." (Docket No. 1-1 at 25; Petitioner Decl. at ¶¶ 40-43).

At approximately 3:30 p.m. on April 1, 2026, ICE served Petitioner with a Bautista Class Notice in Spanish - ICE's own contemporaneous acknowledgment that Petitioner is a member of the Bautista class entitled to specific procedural protections regarding U-visa eligibility. (Docket No. 1-1 at 25).

On April 2, 2026, Petitioner was transferred to the Adelanto ICE Processing Center. He has been continuously detained there ever since. He has now been detained for more than 30 days as of the filing of the Petition. (Petitioner Decl. at ¶ 44).

On the same day Petitioner was arrested - April 1, 2026 - ICE served him with a Notice to Appear (Form I-862) ("NTA") charging him as inadmissible under INA §§ 212(a)(6)(A)(i) and 212(a)(7)(A)(i)(I), codified at 8 U.S.C. §§ 1182(a)(6)(A)(i), 1182(a)(7)(A)(i)(I). The NTA lists Petitioner's date and place of entry as "Unknown Date Unknown Time, UNK, WI-Without Inspection." The NTA was uploaded to the Executive Office for Immigration Review on April 2, 2026 at 12:36:15 p.m. PDT. (Docket No. 1-1 37-40).

/ / /

/ / /

8

Despite Petitioner's status as a long-term interior resident plainly governed by 8 U.S.C. § 1226(a)'s discretionary bond framework, Petitioner has been afforded no individualized custody determination. (Petitioner Decl. at ¶¶ 33-43).

## III.

## PETITIONER'S CLAIMS

The Petition alleges the following claims for habeas relief: (1) Petitioner's detention under 8 U.S.C. § 1225(b)(2) is unlawful and Petitioner should instead be subject to 8 U.S.C. § 1226(a)); (2) Petitioner's warrantless civil immigration arrest was unlawful under 8 U.S.C. § 1357(a)(2) and 8 C.F.R. §§ 287.3, 287.8; (3) Petitioner was unlawfully subject to a pretextual arrest of a known U-Visa holder in violation of ICE's own interim guidance, 8 U.S.C. § 1367, and the Fifth Amendment; (4) Petitioner's detention without a pre-deprivation hearing after three decades of unconditioned liberty violated Petitioner's right to procedural Due Process under the Fifth Amendment; (5) Petitioner's arbitrary and punitive detention violates his right to substantive Due Process under the Fifth Amendment; (6) Fourth Amendment unreasonable seizure; and (7) violation of the Administrative Procedure Act and Fifth Amendment Due Process caused by arbitrary agency action subverting the U-Visa statutory scheme. (Petition at 25-43).

## IV.

## LEGAL AUTHORITY

A writ of habeas corpus is "available to every individual detained within the United States." Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." Preiser v. Rodriguez, 411 U.S. 475, 484 (1973). A court may grant a writ of habeas corpus to a petitioner who demonstrates to be in

custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Traditionally, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." I.N.S. v. St. Cyr, 533 U.S. 289, 301 (2001). A noncitizen in the custody of immigration authorities may bring a writ of habeas corpus pursuant to 28 U.S.C. § 2241 on the grounds of their detention violates the Constitution or other federal laws. 28 U.S.C. § 2241(c)(3); Zadvydas v. Davis, 533 U.S. 678, 687-88 (2001) (federal courts retain jurisdiction to consider habeas relief under Section 2241 for noncitizens subject to detention following an order of removal).

To the extent Petitioner has raised claims under the Due Process Clause of the Fifth Amendment, the Due Process Clause prohibits deprivations of life, liberty, and property without due process of law. See U.S. Const., amend. V. These protections extend to noncitizens present in the United States. See, e.g., Trump v. J.G.G., 604 U.S. 670, 673 (2025) (per curiam) ("It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings." (internal quotation marks omitted)); Zadvydas, 533 U.S. at 693 ("[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."); Hussain v. Rosen, 985 F.3d 634, 642 (9th Cir. 2021) ("The Fifth Amendment entitles aliens to due process of law in deportation proceedings." (internal quotation marks and brackets omitted)). Indeed, "the government's discretion to incarcerate noncitizens is always constrained by the requirements of due process . . .." Hernandez v. Sessions, 872 F.3d 976, 981 (9th Cir. 2017).

Due process "is a flexible concept that varies with the particular situation." Zinermon v. Burch, 494 U.S. 113, 127 (1990). Indeed, the Due Process Clause provides both procedural and substantive protections. See, e.g., Regino v. Staley,

10

133 F.4th 951, 959 (9th Cir. 2025) ("This clause protects individuals against two types of government action: violations of substantive due process and procedural due process." (internal quotation marks omitted)).  To determine whether detention violates procedural due process, courts frequently apply the three-part test set forth in Mathews v. Eldridge, 424 U.S. 319 (1976).  See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206 (9th Cir. 2022) (collecting cases and applying the Mathews test to a constitutional challenge to detention pursuant to 8 U.S.C. § 1226(a)).  Under Matthews, courts weigh the following three factors: (1) "[T]he private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."  Mathews, 424 U.S. at 335; see also id. at 332 ("Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment.").

## V.

## DISCUSSION

**A.    Petitioner's Procedural Due Process Claim Warrants Habeas Relief.**

Here, Petitioner alleges that he entered the United States without inspection 34 years ago, and has lived a peaceful and productive life ever since. (Docket No. 1 at 2).  He has established a stable life in the community, maintained steady work, is active in his church, and has no criminal history. (Id. at 5, 9).  He is also a beneficiary of a Form I-918 U-Visa having suffered injury in a criminal assault while acting as a good Samaritan. (Id. at 11-12).  On April 1, 2026, Petitioner attended a biometrics

11

appointment scheduled in connection with his pending U-visa petition.  (Id. at 2).  He was arrested by ICE without a warrant, was served with a Notice to Appear, charging him as inadmissible under INA Sections 212(a)(6)(A)(i) and 212(a)(7)(A)(i)(I).  (Id. at 15).  Since his detention on April 1, 2026, he has not received any bond or custody determination hearing.

In their Answer, Respondents do not challenge or otherwise dispute these facts, or substantively dispute any of Petitioner's claims.

In light of Respondents' Answer, the Court finds that the facts alleged in the Petition are undisputed.  As such, based on these undisputed facts, the Court finds that Petitioner developed a substantial liberty interest in remaining out of custody based on the life he built in the United States since arriving here 34 years ago.  See, e.g., Tinoco v. Noem, 2025 WL 3567862, at *6 (E.D. Cal. Dec. 14, 2025) ("The length of time and the connections Petitioner made with his community during that time create a powerful interest for Petitioner in his continued liberty."); Garcia v. Andrews, 2025 WL 1927596, at *4 (E.D. Cal. July 14, 2025) ("The length of time and the connections Petitioner made with his community during that time create a powerful interest for Petitioner in his continued liberty."); Pinchi v. Noem, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) ("Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty."). This "liberty is valuable and must be seen as within the protection of the [Due Process Clause]." Morrissey v. Brewer, 408 U.S. 471, 482 (1972).

Therefore, the Court concludes that Petitioner's arrest by immigration authorities on April 1, 2026, without notice or a pre-deprivation hearing, violated Petitioner's procedural due process rights.  See, e.g., J.A.E.M. v. Wofford, 812 F. Supp. 3d 1058, 1071 (E.D. Cal. 2025) ("On balance, the Mathews factors show that

12

petitioner is entitled to a bond hearing, which should have been provided before she was detained.  The root requirement of the Due Process Clause is that an individual be given an opportunity for a hearing *before* he is deprived of any significant protected interest." (internal quotation marks and brackets omitted)); Mourey v. Bowen, 2026 WL 467567, at *4 (C.D. Cal. Jan. 31, 2026) ("Pursuant to the holding in Mathews, Petitioner should have been afforded a pre-detention hearing."), report and recommendation adopted, 2026 WL 464788 (C.D. Cal. Feb. 17, 2026). Moreover, it is undisputed that since being taken into custody, Petitioner has not been provided an opportunity to post bond or be released on other conditions.

Given the violation of Petitioner's due process rights, the Court further concludes that "Petitioner's release is necessary to return him to the status quo." Nazarian v. Noem, Case No. 5:25-cv-KK-DSR, 2025 WL 3236209, at *7 (C.D. Cal. Nov. 3, 2025).  The status quo is "the last uncontested status which preceded the pending controversy."  GoTo.com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1210 (9th Cir. 2000) (internal quotation marks omitted).  The last uncontested status here is Petitioner's unconditional release.  See Nazarian, 2025 WL 3236209, at *7 ("The last uncontested status in this case is Petitioner's release on his second OSUP before his current re-detention.").  "Accordingly, Petitioner's release from custody is the appropriate remedy."  Id.; see Esmail v. Noem, Case No. 2:25-cv-8325-WLH-RAO, 2025 WL 3030590, at *6 (C.D. Cal. Sept. 12, 2025) ("Providing Petitioner an interview *ex post facto*, while keeping him detained in ICE's custody, would not remedy the apparent constitutional violation that Petitioner has suffered in being re-detained without any measure of due process. The fact that he was not given an interview renders his detention unlawful in the first place, necessitating his release.").

/ / /

13

Moreover, release is particularly warranted in light of Respondents' awareness and concession that Petitioner is a member of the Bond Eligible Class certified in Maldonado Bautista v. Santacruz, 2025 WL 3288403 (C.D. Cal. Nov. 25, 2025), reconsideration granted in part, 2025 WL 3713982 (C.D. Cal. Dec. 18, 2025), and amended and superseded on reconsideration, 2025 WL 3713987 (C.D. Cal. Dec. 18, 2025). (Dkt. 7 at 2). On December 18, 2025, the court in Maldonado Bautista entered final judgment and granted declaratory relief to all members of the Bond Eligible Class. See Bautista v. Santacruz, 2025 WL 3713987, at *32 (C.D. Cal. Dec. 18, 2025), judgment entered sub nom. Maldonado Bautista v. Noem, 2025 WL 3678485 (C.D. Cal. Dec. 18, 2025).

Pursuant to the final judgment entered in Maldonado Bautista, "the Bond Eligible Class members are detained under 8 U.S.C. § 1226(a), are not subject to mandatory detention under § 1225(b)(2), and are entitled to consideration for release on bond by immigration officers and, if not released, a custody redetermination hearing before an immigration judge." Maldonado Bautista v. Noem, 2025 WL 3678485, at *1 (C.D. Cal. Dec. 18, 2025). On March 6, 2026, the Ninth Circuit administratively stayed the December 18, 2025 declaratory judgment in Maldonado Bautista "insofar as [it] extends beyond the Central District of California" pending a ruling on the Government's motion for a stay pending appeal. Maldonado Bautista v. Dep't of Homeland Sec., No. 26-1044, Dkt. 5 at 1 (9th Cir. Mar. 6, 2026). Thus, the December 18, 2025 declaratory judgment remains effective and enforceable within the Central District of California.

Accordingly, pursuant to the final – and binding – judgment in Maldonado Bautista, Petitioner is detained pursuant to 8 U.S.C. § 1226(a) and is not subject to mandatory detention under § 1225(b)(2). See Maldonado Bautista, 2025 WL 3678485, at *1. Moreover, Petitioner is entitled to an individualized bond hearing

14

pursuant to 8 U.S.C. § 1226(a). See id. Notwithstanding this fact, and also notwithstanding Respondents' admission that Petitioner is a member of the Maldonado Bautista class, Respondents failed to comply with the final judgment in Maldonado Bautista with respect to Petitioner, as they did not provide him with an individualized bond hearing during the entirety of his detention.

For the reasons set forth above, Petitioner is entitled to immediate release from custody based on the violation of his procedural due process rights. The statutory basis of Petitioner's detention may become relevant to any future determination of Petitioner's suitability for parole, should he be detained in the future.

In addition, the Court concludes that due process requires notice and a pre-deprivation hearing before Petitioner may be re-detained. See, e.g., Ixchop Perez v. McAleenan, 435 F. Supp. 3d 1055, 1062 (N.D. Cal. 2020), appeal dismissed sub nom. Perez v. McAleenan, 2020 WL 8970669 (9th Cir. Dec. 4, 2020) ("Accordingly, this court will join the consensus view among District Courts concluding that ... where ... the government seeks to detain an alien pending removal proceedings, it bears the burden of proving that such detention is justified." (internal quotation marks omitted)). Specifically, the Court concludes that Respondents must show by clear and convincing evidence that Petitioner is a flight risk or a danger to the community and that no condition or combination of conditions could reasonably assure Petitioner's future appearance and/or the safety of the community. See, e.g., Mourey, 2026 WL 467567, at *6 ("If the Government seeks to re-detain Petitioner, he must be provided some kind of hearing before the state deprives him of his liberty. Further, such hearing must be before a neutral arbiter in which the Government bears the burden of providing by clear and convincing evidence that Petitioner is a flight risk or danger to the community." (internal quotation marks, brackets, and citation omitted)); Carballo v. Andrews, 2025 WL 2381464, at *8 (E.D. Cal. Aug. 15, 2025)

15

("On balance, the Mathews factors show that petitioner is entitled to a bond hearing where the government must prove by clear and convincing evidence that he is presently a flight risk or danger to the community.").

Accordingly, the Petition is GRANTED, and a writ shall issue ordering Petitioner's immediate release from custody. [2]

## VI.

## CONCLUSION

IT THEREFORE IS ORDERED that: (1) Judgment be entered granting the Petition; (2) a writ of habeas corpus be issued requiring Respondents to immediately release Petitioner from custody, and return all property confiscated from him during his arrest and processing into detention; (3) enjoining Respondents and their officers, agents, employees, attorneys and persons acting on their behalf in concert or in participation with them, from re-detaining Petitioner without notice and a pre-detention hearing before a neutral arbiter at which the government bears the burden of proving that Petitioner is a flight risk or danger to the community; and (4) Respondents shall file a status report within two (2) business days to confirm that Petitioner has been released from custody pursuant to this Order.

DATED: May 28, 2026

_____
DAVID T. BRISTOW
UNITED STATES MAGISTRATE JUDGE

---

[2]   The Court's determination that Petitioner is entitled to habeas relief on the Due Process claim alleged in the Petition renders it unnecessary for the Court to address the other claims alleged in the Petition.

16